```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
UNITED STATES OF AMERICA,           :
                                    :     16cr739(DLC)
                                    :
             -v-                    :     OPINION & ORDER
                                    :
GABRIEL ARIAS ROSA,                 :
                                    :
                      Defendant.    :
                                    :
------------------------------------X
```

APPEARANCES

For the United States:
Kiersten A. Fletcher
Johnathan Rebold
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, NY 10007

For the Defendant:
Michael Tremonte
Tasha Bradford
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, NY 10004

DENISE COTE, District Judge:

    Defendant Gabriel Arias Rosa ("Rosa") has moved to suppress videotaped statements that he made on June 18, 2017 following the administration of <u>Miranda</u> warnings.  For the following reasons, Rosa's motion is denied.

**Background**

Early on the morning of June 18, 2017, Rosa disembarked at John F. Kennedy International Airport in New York City from a flight from the Dominican Republic. As he was deplaning, Rosa's passport was inspected by two law enforcement officers. After they viewed Rosa's passport, those and other law enforcement officers handcuffed Rosa, photographed and fingerprinted him, and took him to an interrogation room. Also present in the interrogation room were Detective Orlando Colon of the New York Police Department and Investigator Antoinette Guzman of the United States Attorney's Office for the Southern District of New York.

Because Rosa is a native Spanish speaker with limited proficiency in English, he was questioned in Spanish by Detective Colon. After asking Rosa basic questions about his name and background, Detective Colon read Rosa his Miranda rights, in Spanish, asking after each sentence whether Rosa understood. Each time, Rosa answered "Yes." That exchange included the following:

> Colon: If you don't have an attorney available, you have the right to remain silent until you have the opportunity to consult an attorney, do you understand?
>
> Rosa: Uhm-hum.
>
> Colon: Yes or no?
>
> Rosa: Yes.

Detective Colon then asked Rosa if he wished to answer questions, and the two had the following exchange in Spanish:

> Rosa: But those questions that I might answer, if I don't have any attorney now . . . that -- what's going to happen with that?
>
> Colon: I don't, don't understand you.
>
> Rosa: What's going to happen if I tell you . . . if, if we talk without having an attorney present here?
>
> Colon: That's why, that's why I, I asked you.  Now that I--
>
> Rosa: So if I say "no" what's going to happen?

Investigator Guzman then interjected in English, and asked Detective Colon what Rosa was asking.  Investigator Guzman then said, in English, to Rosa, "So, wha -- what happens is that, um, what he was explaining to you is that if you do answer questions you can stop at any time, so. . . ."  Detective Colon and Rosa then had the following exchange in Spanish:

> Colon: Did you, did you understand what she said?
>
> Rosa: No.
>
> Colon: Okay, so I read you your rights already.  Now, now that I explained your rights to you . . . at any time that you don't feel well answering questions you have a right to stop the questions.
>
> Rosa: Okay.
>
> Colon: Did that clear it up some for you?
>
> Rosa: Yes, it cleared it up some.
>
> Colon: Okay, so . . .

3

> Rosa: But you didn't clear up the question I asked.
>
> Colon: Ah.
>
> Rosa: Yes, what happens if I talk without having an attorney behind me -- without having . . .
>
> Colon: That is a right you have. You can talk with an attorney or without an attorney.
>
> Rosa: And if I say that I don't want to talk now, without the attorney, what happens to me?
>
> Colon: That we will explain later. But we have to -- you have to answer this for me first and you tell me what it is that you want to do. And after that -- after you've given me an answer -- I will tell you what agreement we're going to have. So now that I've explained your rights, do you want to answer questions? Yes or no?
>
> Rosa: Yes. Yes.

Detective Colon then handed Rosa a preprinted card with the <u>Miranda</u> warnings written out in Spanish and in English, and instructed Rosa to read the card. Rosa then answered questions for approximately one hour. The entire interrogation was videotaped.

The Government filed a sealed indictment in this matter on November 3, 2016. On June 19, 2017, the indictment was unsealed as to Rosa. The indictment charged Rosa with one count of distributing and possessing with intent to distribute marijuana and one count of using a firearm in connection with the drug offense.

On October 10, Rosa filed a motion to suppress his statements. The Government filed its opposition to Rosa's

4

motion on November 14.  The matter was reassigned from the Honorable Vernon S. Broderick on November 28.  Rosa filed a reply on December 1.  On December 8, the Court denied Rosa's motion without prejudice because he did not support his motion with an affidavit.  On December 21, Rosa filed a motion to suppress accompanied by his own affidavit.  The motion became fully submitted January 8, 2018.  Trial is scheduled to begin on April 2, 2018.

## Discussion

"Absent a warning, the prosecution may not use a statement elicited by the police during a custodial interrogation." United States v. Familetti, 878 F.3d 53, 57 (2d Cir. 2017).  Specifically, a suspect must be informed

> [p]rior to any questioning . . . that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

Miranda v. Arizona, 384 U.S. 436, 444 (1966).  After Miranda warnings have been given, "if the individual indicates that he wishes to remain silent, the interrogation must cease." United States v. Medunjanin, 752 F.3d 576, 585 (2d Cir. 2014) (citation omitted).  Likewise, "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present."  Id. at 585-86 (citation omitted).

5

The prosecution may only introduce a defendant's statement made during a custodial interrogation by showing that the defendant knowingly and voluntarily waived their Miranda rights. See United States v. Taylor, 745 F.3d 15, 23 (2d Cir. 2014). In order to conclude that a defendant has waived their Miranda rights, a court

> must find -- by a preponderance of the evidence -- first, that the relinquishment of the right was voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and, second, that it was made with the requisite level of comprehension, i.e., a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

Medunjanin, 752 F.3d at 586 (citation omitted). "The question key to voluntariness is whether the subject's will was overborne." United States v. Corbett, 750 F.3d 245, 253 (2d Cir. 2014) (citation omitted). Waiver is determined by "look[ing] at the totality of circumstances," and the "government bears the burden of proof." Taylor, 745 F.3d at 23.

"If an accused makes a statement concerning the right to counsel that is ambiguous or equivocal or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her Miranda rights." Berghuis v. Thompkins, 560 U.S. 370, 381 (2010) (citation omitted). Instead, "the relevant inquiry is whether the defendant unambiguously invoked his Miranda rights."

6

United States v. Plugh, 648 F.3d 118, 124 (2d Cir. 2011) (citation omitted). "Where the prosecution shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." United States v. Oehne, 698 F.3d 119, 124 (2d Cir. 2012) (citation omitted).

"[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in question." In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 157, 165 (2d Cir. 2008) (citation omitted). Where assertions in an affidavit, "even if assumed to be true, would not require suppression," a court may properly "declin[e] to hold an evidentiary hearing." United States v. Getto, 729 F.3d 221, 226 n.6 (2d Cir. 2013).

The Government contends that Rosa voluntarily and knowingly waived his Miranda rights. The record supports that contention. There is no evidence that Rosa's waiver was the product of "intimidation, coercion, or deception." Medunjanin, 752 F.3d at 586 (citation omitted). Rosa does not assert that he was abused in any way and does not move to suppress his statement on that ground. Nor does he suggest that the videotape does not accurately capture the interrogation, or that his age,

7

education, mental capacity or any infirmity interfered with him giving a knowing and voluntary waiver of his Miranda rights. As the videotape demonstrates, Detective Colon read Rosa his Miranda rights and, after reading each right, asked Rosa if he understood. Each time, Rosa answered "yes." Further, after having confirmed that Rosa understood each right, Detective Colon handed Rosa a card with the Miranda rights written in Spanish and in English. The videotaped record of the interrogation shows that Rosa reviewed this card for approximately 30 seconds before handing it back to Detective Colon.

Rosa's motion to suppress rests on two contentions. First, in his affidavit, Rosa asserts "I did not understand whether I had the right to refuse to speak to investors [sic] without an attorney in the room." He adds that he did not know whether he had the right to refuse to answer the officers' questions, and that he wanted to speak to an attorney before speaking with the officers. To the extent the motion to suppress is based on these assertions, it can be swiftly rejected. There was no ambiguity in the statements made to advise Rosa of each of his Miranda rights, and Rosa indicated that he understood each of them. In these circumstances, Rosa's conclusory assertion that he did not understand that he had the right to remain silent may be rejected without a hearing. See Getto, 729 F.3d at 226 n.6.

8

Rosa was clearly instructed that he could refuse to speak with the officers.  He was specifically advised that he had the right to remain silent until he had an opportunity to consult an attorney.  He acknowledged understanding that right.  To invoke his right to counsel or to invoke his right to remain silent it was incumbent on Rosa, in these circumstances, to make an unambiguous statement of that choice.

Next, Rosa contends in his affidavit that his statements were involuntary because the detective refused to explain to him, before he chose to either invoke or waive his rights, what would happen to him if he invoked his right to remain silent until he could consult with a lawyer.  The officers had no obligation to explain the next steps in the investigation to Rosa.  They were obligated to administer Miranda warnings to Rosa and to obtain a waiver of those rights before questioning him.  This they did.  Their refusal, prior to Rosa's unambiguous acknowledgement and waiver of his Miranda rights, to explain the next steps they might take in the investigation did not render the waiver involuntary, and Rosa has cited no case law in support of that proposition.  Indeed, any other course could have opened the officers up to claims that they wrongly influenced Rosa's waiver decision.

The officers were appropriately responsive to Rosa's inquiry.  When Rosa asked Detective Colon what would happen if

he spoke without an attorney, Detective Colon answered in Spanish that Rosa could "talk with an attorney or without an attorney." Rosa then asked "And if I say that I don't want to talk now, without the attorney, what happens to me?" Detective Colon answered, "That we will explain later. But we have to -- you have to answer this for me first and you tell me what it is that you want to do. And after that -- after you've given me an answer -- I will tell you what agreement we're going to have. So now that I've explained your rights, do you want to answer questions? Yes or no?" In response, Rosa answered "Yes." Having already read Rosa his Miranda rights and confirmed that Rosa understood his rights, Detective Colon's explaining again that Rosa could speak with or without a lawyer, and asking him to decide whether or not he wished to speak with Detective Colon, is not deceptive and did not overbear Rosa's will. As a result, the Government has carried its burden to show that Rosa knowingly and voluntarily waived his Miranda rights. Rosa's motion for a suppression hearing, and his motion to suppress, are accordingly denied.

## **Conclusion**

Rosa's December 21, 2017 motion to suppress statements he made on June 18, 2017, is denied.

Dated: New York, New York
February 6, 2018

_____
DENISE COTE
United States District Judge